With that, I'll call the case of the United States of America v. Tamara Jeune. Good morning. Good morning, Your Honors. May it please the Court, Margaret Fuldis, Assistant Federal Public Defender on behalf of Tamara Jeune, the appellant. This morning I will be addressing the 404B issue, and I would also like to highlight one of the substantive counts with respect to sufficiency. It's Count 4 of the indictment of false tax claims under 18 United States Code 287. I will rest on my breeze for the rest of the issues unless there are questions by the Court. Can you also, can I add the obstruction in your presentation, the obstruction enhancement? Sure. Thank you. Thank you. In this case, the government has used a prior conviction and an extended evidentiary presentation of that conviction, going through the plea, the sentencing, and the judgment through two different witnesses to drumbeat propensity evidence as a reason why Ms. Jeune should be found guilty of the current charges. The admission of the evidence was improper because it was offered under a propensity rationale. The government literally told the jury at the very start of the case that she had done all these bad things before and that she went back to what she knew best, which was continuing to do more tax fraud. Can I ask a question about that? I will say, I think, and I'm going to give the government an opportunity to address this, but I think that the government took advantage of the 404B ruling, but the 404B ruling went to motive, intent, lack of mistake, which it seems to me this was completely relevant to. Do you take issue with that? Yes, I do, because it could have gone to intent, but that's not how the government used it. I guess I didn't ask the question well. What I'm saying is the court's ruling on admissibility in the first place went to intent, motive, and lack of mistake, and how the government may have used it may or may not have gone to that or may have exceeded that, but the initial ruling on the 404B admissibility, do you take issue with that? No, Your Honor. I do believe that under the ruling, it was a proper ruling, but what the government actually did in front of the jury is really what is important because that is the whole issue about how it affected the jury's verdict, and so for them to have a ruling pretrial and then to come to the trial and tell the jury she did it before and here's all the facts and she begged for mercy and then tell the jury since she did it before, we know she came back and did what she knew best, which was more tax fraud, or she came back and did it again, or she was continuing to do it. I mean, they just repeated it all through the trial, so to answer your question, yes, I agree that the ruling was correct in the sense that it could have been used for intent, but the actual admission and the way it came in during the trial was improper under 404B because it was in direct violation of 404B. It was used for propensity evidence, and the second part is, the second ground why it's improper is because under 403, the way that they used it with the additional witnesses and the arguments they made about it, it was unduly prejudicial under 403. So it was both improper admission at trial and also excessive and undue prejudice at trial. I think the government's response to that is, well, you know, the evidence was so overwhelming, and I wanted to give you a chance to talk about that. I mean, largely it was a circumstantial case, right? Correct. It was overwhelming evidence that there was fraud. That was overwhelming, but there was circumstantial evidence as to who did the fraud, and because the government had this drumbeat all through the whole case, I mean, it was the very first words the jury heard was, she did it before, and it wasn't just like she did it before. It's like, this is what she said at the plea. This is what she said at the sentencing. This is what the judge, and now we know she did all these horrible things. These are the admissions she made. As a matter of fact, if you read through the opening statement, you're not even clear that they're talking about a prior conviction until they get into it a little bit, and then finally they say, this is what she's done before, and this is what she knows best. So it's the way they presented it and the purpose that they used it for during the trial, and they didn't just do it once during the opening statement. They did it twice. They finished going through all the facts. They made their propensity argument, and then they did it again. They went through all the facts again. They then concluded by saying, after Ms. June went to prison, she went back to doing the same thing. Both of those statements are in the beginning of opening. It's docket entry 109, pages 9 through 11, and then it's not like they stopped even there. Then they had these two witnesses come in, the IRS, the retired IRS agent, to talk about what happened at the plea and the sentencing, and the probation officer as well to talk about the judgment. So there was an extensive presentation of this evidence. Can I ask you something, though? As I said, I really am looking forward to hearing from the government about why all of this was necessary and why it would have been permissible under Rule 404B. On the other hand, this is what I have as the evidence in this case, and I'll need you to tell me why this evidence would have left some doubt in and of itself as to how this would have come out, you know, had the government not included this, right? So I've got that there was testimony that she supervised the others. She was seen working on Peach's return, fraudulent tax information about the same entities that were being used to create the false tax refunds was found on her desk. All the people whose names she used the EFINs for were in her circle of relatives and friends. The money from the IRS went into her accounts, and she had signing authority for the accounts. The money that went into those accounts was then used for her personal expenses. So it seems like there was an awful lot of evidence tying her, well, making her the one who was responsible here, including her statements to the agent along with her former husband when she originally, I guess, he took the blame and then supposedly she took the blame. So why in light of all of that, is this still the kind of error, bad as it may have been, that should have been addressed by setting aside the verdict and remanding it for a new trial as opposed to addressing it with the government? Your Honor has hit on a really critical part of the government's case here because they had three different timelines that were going on simultaneously. They had the timeline of the 404B, which dealt with activity that occurred in 2004 and 2005. And then they indicted her in 2009, and she spent almost a year in jail from 2009 to 2010. Then they had a second timeline, which was the civil audit. That dealt with stuff from 2008 to 2009. So that wasn't part of the charges that she was actually being charged with. So those are two separate timelines. Right. She's charged beginning in 2012. So all those things about stuff on her desk and her husband and taking the blame and all that stuff, that's part of the civil audit. That is not part of the current charges. And that is the beauty of their case. But counsel, the audit, when they saw that thing happened in 2011, right? They did. Yes. In other words, the audit was for, you're right, that the audit was for facts that happened in 2008, 2009. But the government being what it is, it was by 2011 that anyone bothered to look at that stuff. Yes. But what they were doing was they were pivoting back and forth between these timelines. I understand. But when you just mentioned the stuff on her desk, that was in 2011, correct? No. That was underlying activity of 2008, 2009. So the stuff on her desk... I know, but when did the agent go in and see the stuff on... That was, yes, you're correct, Your Honors, 2011. Right. And that was actually during the conspiracy or just right before it, right? It was just like on the borderline. Because the third timeline that they were following in their prosecution, which is the most muted of the timelines because of the overemphasis on the other two, is the timeline for the current charges. And they say that it went from January of 2011 to, I think, October of 2016. I guess my ultimate question, I focus on that specific thing, but my ultimate question is very similar to Judge Rosenbaum's. And if that's the case, that seems like a lot of circumstantial evidence showing that your client was involved in a conspiracy and was involved in the filing of false returns, even if she didn't personally press send. Well, what I was trying to get across was the fact that they have these three different things going on at the same time confused a lot of the evidence. Because if you look at the bank state, the bank accounts, there's eight different bank accounts that they say she had control over, except four of them doesn't even have her name on it. And then the other four, there are multiple names. So they still have a problem there of showing that she is the one. And the big gaffe in their prosecution... For example, like one of the bank accounts, it was, she was the signatory and so was the uncle, but the uncle doesn't even live down here. And apparently there doesn't seem to be any evidence tying him to the account. So am I missing something? Maybe I'm missing something. Well, they had very little evidence about the uncle. So what his role was or was not in terms of how long he was down here and stuff, that wasn't really established very well. But the fact of the matter is there were other people who were on these accounts. So they relied a lot on this propensity evidence to show that she was the one. And what I was starting to say was the big gaffe in their prosecution is the fact that she spent a year, almost a year in jail. So if it's really true logically that she is the one, the engine and the director and the essential ingredient of all this fraud, the fraud would have stopped for that nine months that she was in prison. But it didn't stop. It didn't even slow down. In the defendants' exhibits, you've got, you know, you've got all, there's like 80 tax forms that were filed while she was in prison. There was forged checks that were signed on her behalf while she's in prison. There was these calls that went back and forth. The government made a big deal about her interacting with the software company. And, you know, there was these, in defendants' exhibit G, it's clear there are other people who are their inability to explain how this fraud is continuing to go on without her, they would pivot back to the 404B. It was a big part of how they kind of covered and glossed over these issues and made the evidence seem much more overwhelming than it really was. And I see that I am out of time, so. All right. You've reserved time for rebuttal and we'll hear from you again. Pardon me. May it please the court, Greg Knapp for the government. I would like to address both concerns about how the 404B evidence was actually used and also the evidence that was overwhelming, which we argue makes it a harmless error at most anyway. And let's go as a preference, I'll start with the evidence. And I would like to say that... Actually, I'm sorry. Can you start with the use of what was supposed to be 404B evidence? I will tell you, it felt like it was very abusive the way the government used this evidence. There were parts where the government went into questioning about what the sentence was, you know, all of the kinds of ins and outs of the plea. And that does not, in my opinion, relate to showing intent, motive, or lack of mistake. What difference does it make if she was sentenced to 18 months, whether this was a mistake or not, once you have in there the evidence that she previously engaged in this conduct? I mean, I don't understand that. That does seem abusive. And as you know, 404B does not allow the government to put in anything that it wants about a prior conviction. I mean, it's limited. So, you know, it's not an open invitation for the government to just walk through the gate and represent a case that's already been closed. You know, I'm really troubled by what the government did here. I will address your question specifically about the sentence. Regarding where the government was allowed to get everything in it wanted, the record does not support that because what was actually admitted were heavily redacted versions of the prior guilty plea transcript, of the prior sentencing transcript. Right. Whether the government could get in everything it wanted or not is different from whether the government abused the ruling on 404B. If you can tell me why it matters to you that she was sentenced to 18 months, I mean, among a number of other things, you know, that would be very helpful to me. Because the evidence also showed that although she was sentenced to 18 months, she served a reduced time. And how does that show lack of motive or lack of mistake or intent or motive? Well, one thing that I may agree with Ms. Fulda says is that the timeline here is important. And one of the arguments was that the defendant, as part of her plan and preparation, took advantage of the days immediately leading up to the start of her sentence in order to reactivate her business' corporate status, investment equity development. That's a finding by Judge Scola as well in the sentencing context. So that's a point of preparation. Why could you not just put in the fact that she had reactivated it without respect to the sentence? Because the defendant is arguing that other people are doing this. And so the fact that it occurred just before she went into prison, when she still had the ability to do so, was probative. And it's only probative if she's arguing that she wasn't able to do it. But she did not argue she was not able to do it. So why is it probative? And again, 404B here was admitted for one specific purpose, you know, intent, motive, lack of mistake. How does it go to any of those three things? Well, motive, lack of mistake, not necessarily. But plan and preparation was also part of it. With respect to that specific item, the sentence, that was presented to the district court judge. I would say, as to this- I mean, can I- I'm sorry to interrupt. And, you know, you are in the unfortunate position of being the person who's before us right now. But, you know, I know the government has a hard job to do, and it often does it admirably. And I'm sure that the prosecutors in this case thought they were doing their best. But we see this time and time again, where there is a 404B ruling, and the government seems to take advantage of it. And on the one hand, you know, if you have a verdict where you find that it's harmless error because the evidence is so overwhelming, you know, you don't want to put the people and the system and everything through the expense of doing the same thing over again. You know, under the law, of course, that's the ruling that the Supreme Court has made, that it's harmless error, and we don't do that. But on the other hand, because we're not taking any action here, it seems like it keeps happening. I wonder what we could do to prevent this kind of thing from happening if we don't start, you know, finding that these kinds of things cause the case to have to be retried. I suppose all I can say is that I disagree that there was an opportunistic use of this evidence. We believe that all of the portions of the unredacted portions of the prior sentencing, redactions which were agreed to by the defense counsel, by the way, could serve a proper formal purpose, not just motive and intent, but also plan, also the defendant's knowledge. What did the plea for mercy at the prior sentencing have to, I mean, how does it demonstrate any of that? I'll acknowledge that was not necessary. Okay. I mean, it goes to character, right? I don't think it goes to character. I mean, we have here a defendant who, in the course of a sentencing proceeding, is expressing some contrition and asking for leniency. Now, while that may not be directly necessary to the four-way purposes, I would also suggest it's not unusual or particularly inflammatory. And it's important to read— It's one benefit to being my age. You know, I've seen a lot of trials and a lot of 404B evidence. And you say that's not unusual. I find this extremely unusual. I'm sorry. Not unusual to occur at a sentencing proceeding. I'm not saying that. There's no reason to expect that that would unduly confuse the jury as to what was before it. Now, I want to add that that particular line about mercy, that falls immediately between two other lines in the prior sentencing transcript in which the defendant acknowledges her mistake. That was part of the defense. Well, yeah, but, you know, I mean, you're parsing this word by word. I mean, this goes on for pages and pages and pages. The 30 charges, you know, what did she say, you know, on and on. I mean, it's just not consistent, I think, with a proper use of 404B. I mean, if you do think that's proper, then, you know, all the more reason for us to, you know, write an opinion that starts putting some limitations on what the government does in these circumstances. I mean, what we want is for people to leave these proceedings feeling like they've been treated fairly. And if you're pushing the limits of things that you acknowledge are not necessary for the jury to hear, you know, what do we do about that? All I would say is that those additional portions, which might have not strictly been necessary, they fell within the context of portions of the sentencing proceedings. This is not giving me any comfort, you know. We didn't have to do it, but we could do it, so we did it. That's basically what I'm hearing you say. All I'm acknowledging, Your Honor, is that, like, perhaps even more could have been redacted without. Let me ask it to you this way. Let's assume that we find it's abuse of 404B. What are we to do about that? Maybe not even, you don't even have to think about in this particular case, but let's just say we find that there has been a pattern of abuse of 404B. What are we to do about that so we can discourage this kind of thing from continuing to happen? Maybe you have some ideas as to how we should address it. It's difficult for me to answer coming into this with the view that. I understand. Well, let me put it this way. If you, this is your chance to tell us. If you don't answer it, it's certainly your right not to answer it, but if you don't answer it and we conclude it was abusive here, we're going to come up with our own idea about what to do, and I thought you might want to give us some ideas of your own. I think we can acknowledge some unique characteristics of this case, which might have led to a little bit more coming in that was strictly necessary. And in particular, the fact that initially. But again, you're talking about, you're defending it here. I'm telling you to assume the hypothetical that we find an abuse of 404B. So that's already done. I understand your position that it didn't happen, and I will consider that. But the hypothetical before you is assume abuse of 404B. What should we as the court do about that so that this doesn't keep happening? I suppose the court would have to highlight which portions of the statements, the arguments it felt were improper, and say that the government should modulate more towards conservatism in terms of which portions of these proceedings it enters. Beyond that, I mean, not knowing exactly what opinion the court would write, what it would feel in terms of what were the abusive portions here, it's sort of hard to, other than highlighting those and cautioning more a conservative approach in the future, I don't, I really don't know what else I can say here. I mean, I just, here's a case where the district court admitted the evidence on multiple theories, 404B and inextricably extwined initially, and then the government worked with the court and defense counsel to redact some portions, multiple portions, more than half of the documents at issue, to leave only what it felt was appropriate for 404B purposes. You want us to take it statement by statement. What about the statement in closing? You know, she can just go back to the fraud factory she's been, you know, involved in. That's the closing argument. Go back to the fraud factory. Was that, I mean, you think that comes within the purview of 404B? And if so, why? I mean, I think in the context, the prosecutor is responding to the argument that was raised. I understand what the prosecutor was doing. I think I pretty well understand that. You're telling us we got to take this line by line. I mean, is that fair play? Is that foul play? She can just go back to the fraud factory. I think it's not necessary to say go back. I think that would not have been necessary here to advance the government's argument. But to characterize it as fraud factory, I mean, the evidence of the actual conduct charge, I don't believe that's an improper characterization. It's zealous, but to call that the evidence established that she was a fraud factory, and moreover, that she knew what a fraud factory looked like. She knew this. That goes to her knowledge that the prosecutor's argument. Because recall, the defense here is that I didn't know all this activity was fraudulent. It was others who were doing it. And the prosecutor's observing, well, that's not likely, members of the jury, because the defendant knows what these fraudulent practices look like. And to the extent that's what's being pursued here, that is a proper knowledge argument. That's a proper experience argument. If the court finds that certain statements went beyond that, I mean, I suppose that's within the court's discretion. The court could highlight that as a cautionary note. Can I ask about the sentencing issue? I don't want to cut you off. That's fine. I want to ask about the obstruction enhancement. As I understand, it requires two elements under 3C1.1. The first is that the defendant willfully obstructed or impeded or attempted to obstruct and impede the administration of justice with respect to the investigation, dot, dot, dot, there's some missing stuff there, of the instant offense of conviction. As I understand the civil IRS enforcement action, and I'll concede that a civil IRS enforcement action can be an investigation because it could eventually turn into one, but the one here, as I understand it, was completely unrelated to what happened here. As I understand it, just happenstance, they were investigating the defendant for not filing a return. And in the course of that, they discovered that, who knows, she didn't look on her computer that the same defendant had been investigated and prosecuted for being involved in filing false returns of others, and she, in the course of the investigation, the IRS investigator, turned that into the criminal division, and criminal divisions start an investigation, and that's why we're here. I guess what I ask is, how is this, at least that's that first element, how is the civil investigation with respect to an investigation of the instant defense? Because the civil investigation, although initially targeting the failure to pay taxes for the business, also began to discover the fraudulent practices, which were properly investigated, also as part of the civil audit, but ultimately the criminal investigation. And I certainly know that she found that evidence. She looked on the desk, she saw, the antennas went up, I get it. But if that investigation was with respect to something completely different, in other words, if the defendant was prosecuted for failing to file her own returns, I completely agree that the civil would have ripened into a criminal, and what happened there would have impeded what happened later. But where there are two separate things, it seems odd, because essentially what she said is, I'm closing my investigation and handing over to the criminal division, right? Yes, but by that time, the agent had uncovered fraudulent practices that were also part of this underlying conduct. And on that point, I need to disagree slightly with the characterization of the timeline that was made earlier. The documents that the defendant found, regarding the false employer information, keep in mind that is in 2011 when we have an active business going. Now, admittedly, the agent did not specify, oh, and these false W-2s were for tax years 2011, 2012, the years under the conspiracy, but that's the inference. And also, the agent is investigating as part of her civil audit, but then also as the conduct that led to the criminal charges. The improper diversion of- Where's the evidence, though, that it ripened into a separate civil investigation? I guess that would be my question. I'm not saying there are two separate civil investigations. I mean, there's only one, right? I'm saying there are certain indicators of fraud that were discovered that were properly pursued, both as part of the civil investigation, and then ultimately as the conduct that was charged in this case. There's no doubt about that. I'm not saying the evidence is excludable. I'm simply asking, with regard to the language of this enhancement, how do we say that this was, that the administration of justice with respect to the instant investigation, the instant offense of conviction was obstructed? Because a civil audit can be obstructed. It can be. How was it when it's investigating? The defendant is causing others to lie to the revenue agent about her role at IED. She is also, this isn't specifically mentioned in the brief, but she's also giving false documentation- With respect, counsel, it's with respect to her own taxes, not with respect to an investigation of her filing false returns. They didn't know that then. I believe the record indicates that they did have those, develop that knowledge, that suspicions during the course of the civil audit of the business returns. That's all I have. I'm over. Would the court like to hear about anything else or about the, oh, about the evidence or- I think we understand your argument. Thank you. And your honor, I'll just pick up with the obstruction. It was two separate things. They were two separate timeframes, especially with respect to the monies going in and out of the bank account. That's the bank account 1730. Those were transactions from 2008, 2009. They were not transactions that had to do with the current charges. So they were- Was there any evidence? Your opposing counsel says there was at least some evidence that the civil investigation, while starting as an investigation of your client's own returns, which we're not here about, ripened into something else. Is there evidence of that or is there not evidence of that? I think when the agent saw that she had a prior conviction, that's when she decided she was going to put it criminal. Because from my understanding is this civil part got settled and I think she got a fine for commingling funds, something along those lines. But again, it had that bank account that they're talking about that they spent so long on talking about monies in and out. That's the bank account 1730. It's in the list on page eight of my initial brief. And it's the wrong time frame for these current charges. So our position is that these are two separate things. The civil went to one issue, as your honor has pointed out, and the criminal was a whole different thing. So we believe that that obstruction enhancement was incorrect. I also just wanted to address the cardiacus standard for a harmless error. It's not just a matter of whether there's enough evidence to keep that conviction sufficient. It is that the actual error had substantial sway on the jury. I don't think there's a way that you can look at that and say that it didn't have, that the error of all this propensity evidence and the way they presented it couldn't have affected the jury. I mean, it had a huge effect on the jury. So under cardiacus, because there was the sway that had impact on the jury verdict, that requires that the conviction not stand. And it's the government's burden to prove the harmlessness under cardiacus as well. And I also just wanted to reference the Roberts case. It's an unpublished case, but it's United States versus Roberts. And I did have the site, but now I don't. Anyway, that case had five different factors going for it for admission of the 404B evidence. There was government need. There was intent, disputed intent. There was limiting instructions. There was all of that. But at the end of the day, this court found that the prejudice was overwhelming beyond what the probative value was. And we would say that Roberts case is very comparable to this case because both of those cases were extreme on what the government did with the 404B evidence. And then just as a last part here, I would like to go back to the substantive count. On count four of the indictment, it's a false claims charge. And it went to one tax form for Nicholas Davis that was filed during the tax year of 2013. The government actually brought in Nicholas Davis to testify. And he never was able or said anything about Tamara June filing that tax return. The best that Nicholas Davis could say was that Ms. June was an accountant for his parents. When he went to her business, he never dealt with her. He dealt with this woman, Dorothy June, who also- His information was on Ms. Peach's return, correct? Yes, but in the business, anybody could have had access to that information. But except that Ms. June, your client, was the one who handled Ms. Peach's Davis' returns, correct? In other words, she's the one that met with Peach's Davis. She's the one that went over her returns. She's the one that took all our information. And Nicholas' stuff, which were all in the same time period, was the same stuff that was on, that was given to Ms. June, correct? Well, under Nicholas Davis' testimony, he did not know who processed the paperwork once he dropped it off. He dealt with Dorothy. Dorothy was Peach's friend. She also did taxes. And it's a little unusual that her friend would not be using her. And she did subsequently use Dorothy as her tax accountant. And the other thing about Nicholas Davis' tax form is he said that there was a false bank account on the return for the government to be able to give him the refund. But that account number is 2063. It's not on any of the eight accounts that the government said was related to Ms. June. Same thing with the improper address. He said he didn't live at Plunkett Street. Again, the government had presented evidence of addresses that were related to Ms. June, but Plunkett Street was not one of them. So those two pieces of information, although they were false on that tax form, they were not related to Ms. June, Tamara June. They might have been related to Dorothy June, but they weren't related to Ms. Tamara June. So taking his evidence for what he said, the sum of it is that he was not able to show through his evidence that Ms. June, Ms. Tamara June was related to his false tax return that was filed for that year. And if there aren't any further questions, I would submit the case to you. Thank you for your presentation. Thank you very much. We have the case. So now I...